UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis L. WILSON, Defendant–Appellant.

No. 91–10308.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Feb. 16, 1994.

---

A.J. Kutchins, Berkeley, California, for the defendant-appellant.

Eric Havian, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: ALARCON, LEAVY, and KLEINFELD, Circuit Judges.

LEAVY, Circuit Judge:

In this case we are called upon to decide whether a trial judge improperly intervened in the criminal proceedings before him. Because the long-delayed and woefully inadequate trial transcript makes it impossible for us to answer the question posed, we conclude that the conviction must be set aside and the case remanded for a new trial.

## FACTS AND PRIOR PROCEEDINGS

On August 1, 1990, a federal grand jury handed down a ten-count superseding indictment charging Dennis Wilson with defrauding the federal government by providing worthless sureties for contractors on government projects. Following a jury trial, Wilson was convicted of all ten counts and sentenced to a period of thirty-six months' imprisonment, as well as being ordered to pay fines and make restitution. He timely appealed from that conviction on March 26, 1991. That same day the district court relieved Wilson's trial counsel and appointed appellate counsel,[1] who was ordered to request transcripts by April 17, 1991.

Wilson's appellate counsel failed to request transcripts and did not file an opening brief on appeal. He did file several requests for

---

1. Wilson retained private counsel for trial, but sought and obtained appointed counsel for appeal under the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A.

extensions of time, however, and twice petitioned to be relieved as counsel, citing medical reasons. Counsel's second petition was granted on October 11, 1991, and present counsel was appointed ten days later. A new briefing schedule was established with all transcripts to be filed not later than December 30, 1991.

The court reporter failed to file the trial transcripts. When Wilson's counsel moved for an order directing the reporter to file the transcripts she responded with a motion for enlargement of time, which was granted. Thus began a pattern of missed deadlines, requested extensions, admonitions from this court, and further extensions. Eventually the court reporter was warned that, if she failed to meet a July 6, 1992 deadline for filing all trial transcripts the appeal would be remanded to the district court for the limited purpose of determining whether she should be held in contempt.

By July 6, 1992, the court reporter had filed several volumes of the trial transcript with some portions missing, others in untranscribed shorthand, and much of it paginated in a random, nonsequential fashion. The following week Wilson petitioned the district court for an order to show cause why the court reporter should not be held in contempt. The district court set the matter down for hearing on July 31, 1992. On the morning of the scheduled hearing the court reporter filed an assortment of amendments, corrections, indices, and other materials, and declared that she had lost two substantial portions of the record.[2]

On August 11, 1992, we set another briefing schedule and directed Wilson's counsel to proceed in district court to reconstruct the missing portion of the transcripts. *See* Fed. R.App.P. 10(c), (e).[3] Thereafter Wilson submitted to the district court a declaration that neither he nor his attorney could recall the details of the missing testimony and it was therefore impossible fairly to reconstruct the missing record. The government then submitted a ten-page statement setting forth the substance of the lost testimony, based on the prosecutor's contemporaneous notes. Over Wilson's objection the district court certified the record, including the government's ten-page statement.

Wilson thereafter filed an eight-page list of citations to some 180 passages in the transcript that he argued were erroneous. A majority of the defective passages were subsequently corrected by agreement of the parties. With respect to the uncorrected passages, Wilson challenged eleven of the government's proposed reconstructions, offered alternative corrections for eight others, and conceded that eighteen passages could never be reconstructed. (The sorry state of the record is perhaps best exemplified by the

2. The government asserts that only about ninety minutes of Wilson's redirect and recross-examination were lost, along with an additional twenty minutes or so of testimony from a defense character witness and a recalled government agent. Wilson claims that as much as a full day of testimony was not transcribed. The court reporter guessed that between twenty and forty pages of testimony were missing, while the district court at one point estimated that perhaps as much as 200 pages were not delivered.

3. Rule 10, Fed.R.App.P. reads, in relevant part: "(c) *Statement of the evidence or proceedings when no report was made or when the transcript is unavailable.* If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.

. . . .

(e) *Correction or modification of the record.* If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals."

fact that, when the court reporter filed a previously omitted transcript showing that Wilson's version of a reconstructed passage was accurate, the government represented that its version, and not the court reporter's, was correct.) Following a hearing on February 10, 1993, the district court concluded that the government's submissions were reliable, adopted the corrections proposed by the government, and again certified the record on appeal.[4]

## ANALYSIS

Wilson argues that the court reporter's unconscionable delay in providing him with a transcript effectively denied him his right to a timely appeal and, therefore, deprived him of his constitutional right to due process of law. The government contends that Wilson was not denied due process because, *inter alia*, much of the delay can be attributable to Wilson's own counsel, Wilson suffered no prejudice as the result of any delay attributable to the government, and the length of the delay was not unreasonable, anyway.

 It is true that "extreme delay in the processing of an appeal may amount to a violation of due process." *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.), *cert. denied*, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990). Moreover, delays caused by court-appointed counsel and by court reporters are attributable to the government for purposes of determining whether a defendant has been deprived of due process on appeal. *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir.1990). However, mere delay, in and of itself, will not give rise to a due process claim absent a showing of prejudice to the defendant. *United States v. Tucker*, 8 F.3d 673, 676–77 (9th Cir.1993) (en banc).

Whether or not appellate delay results in prejudice sufficient to warrant reversing a defendant's conviction is determined by ex-amining three factors: "(1) oppressive incarceration pending appeal, (2) anxiety and concern of the convicted party awaiting the outcome of the appeal, and (3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." *Tucker*, 8 F.3d at 676 (quoting *Antoine*, 906 F.2d at 1382)). Because Wilson is free on bail pending appeal and has made no showing that his level of anxiety is any greater than that suffered by others in his situation, the first two factors are inapposite. As for the third factor, *i.e.*, whether or not Wilson's appeal has been impaired, we must turn to the key issue presented in this appeal.

Wilson argues that the only real issue in controversy is his good faith belief that his statements and actions were lawful and honest, and that this defense was frustrated by the trial judge's ceaseless intervention in the proceedings. In support of this contention Wilson cites to hundreds of passages in the trial transcripts in which he asserts that the trial judge improperly questioned witnesses, offered caustic commentary, mocked and belittled defense counsel, and offered observations regarding evidentiary matters.

The government freely acknowledges that the district judge frequently injected himself in the trial, noting such examples as the court referring to a business venture as a charade, calling a witness's testimony absurd, and, in an apparent characterization of Wilson's defense, relating a story about a child who said he had a $40,000 dog because he traded in two $20,000 cats for it. The government contends, however, that the district judge's active and at times sharp questioning of witnesses was acceptable because the court was impartial in its application, *i.e.*, the trial judge did it to witnesses for both parties. The government further argues that any resultant harm was cured by the court's admonition to the jurors that they were not to infer anything from the judge's questions and comments. Finally, the government

---

4. Prior to oral argument on appeal, Wilson twice moved for summary reversal, arguing that the court reporter's unreasonable delay in providing a trial transcript had denied him due process of law. Although both motions were denied, a panel of this court subsequently ordered that Wilson be released on bail pending appeal, noting that

"[A]ppellant has shown that his appeal ... raises a substantial question of law or fact that, if determined favorably to appellant, is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed."

contends that the evidence of Wilson's guilt was so overwhelming that the court's questioning of witnesses and comments on the evidence, even if improper, could have had no effect on the verdict.

■ A trial judge has broad discretion in supervising trials and may participate in the examination of witnesses to clarify issues and call the jury's attention to important evidence. *Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 709 (9th Cir.1990) (as amended); *United States v. Laurins,* 857 F.2d 529, 537 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). "A trial judge's participation may, however, overstep the bounds of propriety and deprive the parties of a fair trial." *United States v. Mostella,* 802 F.2d 358, 361 (9th Cir.1986). Specifically, a new trial should be granted "if the record discloses actual bias on the part of the trial judge or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury the appearance of advocacy or partiality." *Id.* (internal quotation omitted).

■ It is when we turn to the record that we run into serious problems with this appeal. In addition to three file folders of documents, there are some 2,000 pages of transcripts scattered through fifty-eight volumes, at least seventeen of which are "corrections" to earlier volumes. The district court's final order correcting and certifying the record is seventeen pages long and makes literally hundreds of changes to the record, none of which are noted on any of the transcript volumes. Portions of the transcripts are either missing or, where reconstructed, in serious dispute. The transcript volumes are not sequentially numbered, and the pagination throughout is inconsistent. Some of the revisions, amendments, and corrections provided by the court reporter and/or the parties fail to specify exactly what is being changed. The two indices provided by the court reporter are inconsistent and virtually worthless. Perhaps most telling of all, at least twelve of the "corrected" sections

prepared by the court reporter were filed with this court nearly six months *after* the district court had issued its final certification of the record.[5]

■ "A criminal defendant has a right to a record on appeal which includes a complete transcript of the proceedings at trial." *United States v. Carrillo,* 902 F.2d 1405, 1409 (9th Cir.1990). Although this right is statutorily guaranteed by the Court Reporters Act, 28 U.S.C. § 753(b)(1), a court reporter's failure to record all proceedings verbatim does not necessarily require reversal. *Carrillo,* 902 F.2d at 1409. Rather, the defendant must demonstrate "specific prejudice" resulting therefrom. *Id.* at 1409–10. Where the trial court has certified the accuracy of the record, however, specific prejudice will not be found absent a showing that the certification is clearly erroneous. *Id.* at 1410.

Unlike the appeal in *Tucker,* we cannot say that Wilson's appeal lacked merit, or that his conviction would have been affirmed had the court reporter done her job properly and promptly. He has made a substantial enough showing of judicial misconduct, so that we cannot determine without reviewing the transcript whether he had a fair trial. We cannot review the transcript because the court reporter has not prepared a usable transcript.

We are unable to determine the merits of Wilson's judicial bias claim from the record before us. Accordingly, we hold that the trial court's certification of the accuracy of this record was clearly erroneous. Furthermore, the absence of an accurate and reliable record leads us to conclude that Wilson's appeal has been impaired and, therefore, prejudiced by the delay that resulted in this inadequate record. *See Tucker,* 8 F.3d at 676.

**REVERSED** and **REMANDED** for a new trial.

---

5. With respect thereto we note that the government's most recent attempt to correct the record does not rely on these subsequently filed items.