STATE OF NORTH CAROLINA v. STEVE LAWRENCE BERRYMAN

No. 302A05

(Filed 27 January 2006)

**Appeal and Error— transcript—six-year delay in producing— not prejudicial**

A six-year delay in producing a trial transcript for appeal did not violate defendant's statutory and due process rights. Appellate review in a criminal proceeding is provided and governed by the North Carolina General Statutes and Appellate Rules, and alleged violations of the right to an appeal shall be considered under the four-factor analysis of *Barker v. Wingo*, 407 U.S. 514. Here, a six-year delay was sufficient to trigger examination of the remaining factors; the record was devoid of any indication of why the delay occurred; although defense counsel made some efforts to expedite defendant's appeal, defendant did not sufficiently assert his right to appeal; and, considering the recognized protected interests, defendant has not shown prejudice.

Justice BRADY dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 170 N.C. App. 336, 612 S.E.2d 672 (2005), finding no error in the judgment entered 19 February 1998 by Judge Henry V. Barnette, Jr. in Superior Court, Wake County. Heard in the Supreme Court 17 October 2005.

**STATE v. BERRYMAN**

[360 N.C. 209 (2006)]

*Roy Cooper, Attorney General, by Thomas J. Ziko and William P. Hart, Special Deputy Attorneys General, for the State.*

*George E. Kelly, III for defendant-appellant.*

LAKE, Chief Justice.

The issue presented for review in this case is whether a six-year delay in the preparation of a trial transcript for appellate review violates a criminal defendant's constitutional or statutory right to an appeal.

Steve Lawrence Berryman ("defendant") was indicted on 18 November 1997 for: (1) robbery with a dangerous weapon in violation of N.C.G.S. § 14-87; (2) possession of crack cocaine in violation of N.C.G.S. § 90-95(a)(3); and (3) being an habitual felon under N.C.G.S. § 14-7.1. The underlying facts of these charges are described in the Court of Appeals' opinion below, *State v. Berryman*, 170 N.C. App. 336, ——, 612 S.E.2d 672, 674-75 (2005), and are not a basis for this review.

Defendant was tried by a jury on 18 February 1998. Following presentation of evidence by the State and the defense, the jury found defendant guilty of: (1) common law robbery; (2) possession of cocaine; and (3) being an habitual felon. After determining defendant's prior record level was IV, the trial court entered judgment and sentenced defendant to a prison term of 133 months to 169 months. Defendant gave notice of appeal in open court. Defendant was designated indigent, and his trial counsel was appointed as appellate counsel in the Appellate Entries signed by the trial judge.

On 20 February 1998, the clerk's transcript order, certificate, and the Appellate Entries were personally delivered by a deputy clerk of Wake County Superior Court to Johnie L. King, III ("King"), the court reporter. The order instructed King to "[p]repare and deliver to the parties a transcript of all portions of the proceedings in the above-captioned case." The order did not specify anything to be excluded. King completed the prepared transcript on 30 January 2004 and mailed it to the trial court on 2 February 2004, almost six years after defendant's conviction. The transcript was filed with the North Carolina Court of Appeals on 23 April 2004.

Defendant argued in his appeal to the Court of Appeals: " 'The State's failure to provide a transcript of the proceedings in a timely fashion has deprived [him] of his constitutional and statutory rights

to meaningful and effective appellate review.' " *Berryman*, 170 N.C. App. at ——, 612 S.E.2d at 676. The record includes copies of a letter, a written request, and a signed affidavit drafted by defense counsel regarding the status of defendant's trial transcript. The letter, dated 3 April 2000, and the written request, dated 31 May 2000, are both addressed to King. Defense counsel's affidavit details fifteen separate inquiries concerning defendant's trial transcript:

   a.  1/13/99—Phone msg. to J. King re: transcript—completed?

   b.  5-17-99—Confer w/ct. reporter; phone msg. to ct. reporter.

   c.  9-30-99—Phone call to court reporter.

   d.  10-7-99—Confer w/court reporter re: transcript.

   e.  1-14-00—Confer w/court reporter re: transcript.

   f.  4-10-00—Draft letter to court reporter.

   g.  4-18-00—Hand-delivered letter to court reporter; confer w/ct. reporter.

   h.  5-31-00—Court Reporter Request.

   i.  6-1-00—Deliver Court Reporter Request.

   j.  12-18-00—Review dates/check status of transcript.

   k.  11-18-03—Obtained telephone number for J. King from courthouse personnel; telephone msg. to J. King.

   l.  11-19-03—Telephone call w/J. King re: transcript.

   m.  11-21-03—Telephone call from J. King; mailed him copy of appeal entry.

   n.  1-22-04—Telephone call to J. King re: transcript.

   o.  2-10-04—Received transcript.

There is no indication in the record and defendant does not assert that the State either purposefully delayed production of the transcript or assisted with its procurement beyond the clerk's 20 February 1998 transcript order. In addition, defense counsel's inquiries concerning defendant's trial transcript as described above were all directed to King, not to the State, the trial court, the clerk of superior court, or the clerk of the Court of Appeals. There is no explanation in the record for the delay.

STATE v. BERRYMAN

[360 N.C. 209 (2006)]

After reviewing defendant's arguments, the Court of Appeals' majority opinion held the nearly six-year delay did not deprive defendant of his due process rights. *Berryman*, 170 N.C. App. at ——, 612 S.E.2d at 678. Judge Timmons-Goodson dissented, concluding "the length of the delay and the disregard of defendant's assertions of his right to a speedy appeal produced a due process violation in the instant case." *Id.* at ——, 612 S.E.2d at 678. Defendant appealed to this Court as of statutory right based on the dissenting opinion. *See* N.C.G.S. § 7A-30(2) (2005). After careful review and for the reasons set forth below, we hold the approximate six-year delay did not violate defendant's constitutional rights or any statutory right and affirm the decision of the Court of Appeals.

We note at the outset defendant asserts violations of both his federal and state constitutional rights. This Court has recognized:

> State courts are no less obligated to protect and no less capable of protecting a defendant's federal constitutional rights than are federal courts. In performing this obligation a state court should exercise and apply its own independent judgment, treating, of course, decisions of the United States Supreme Court as binding and according to decisions of lower federal courts such persuasiveness as these decisions might reasonably command.

*State v. McDowell*, 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 732 (1986), *habeas proceeding at McDowell v. Dixon*, 858 F.2d 94 (4th Cir. 1988). Thus, we shall consider defendant's contentions in both the federal and state context.

At common law, criminal defendants were not afforded appellate review of final judgments entered based upon convictions. *McKane v. Durston*, 153 U.S. 684, 687, 38 L. Ed. 867, 868 (1894); *State v. Bailey*, 65 N.C. 426, 427 (1871) ("At common law, there was no appeal from the decision of any of the Courts, high or low . . . ."). The United States Constitution does not require either the federal government or the states to provide a right to an appeal from criminal convictions. *Halbert v. Michigan*, —— U.S. ——, ——, 162 L. Ed. 2d 552, 559-60 (2005) (citing *McKane*, 153 U.S. at 687, 38 L. Ed. at 868); *Evitts v. Lucey*, 469 U.S. 387, 393, 83 L. Ed. 2d 821, 827 (1985) (citing *McKane*, 153 U.S. at 687, 38 L. Ed. at 868); *Jones v. Barnes*, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 993 (1983); *Ross v. Moffitt*, 417 U.S. 600, 611, 41 L. Ed. 2d 341, 351 (1974) (citing *McKane*, 153 U.S. at 687, 38 L. Ed. at 868); *Ortwein v. Schwab*, 410 U.S. 656, 660, 35 L. Ed. 2d 572, 576 (1973) (citations omitted); *Griffin v. Illinois*, 351 U.S. 12, 18, 100

L. Ed. 891, 898 (1956) (citing *McKane,* 153 U.S. at 687, 38 L. Ed. at 868); *McKane,* 153 U.S. at 687-88, 38 L. Ed. at 868. Rather, "[i]t is wholly within the discretion of the State to allow or not to allow such a review." *McKane,* 153 U.S. at 687, 38 L. Ed. at 868; *see also Kohl v. Lehlback,* 160 U.S. 293, 299, 40 L. Ed. 432, 434 (1895) ("[T]he right of review in an appellate court is purely a matter of state concern . . . .").

Should a state provide an appeal of right, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts,* 469 U.S. at 393, 83 L. Ed. 2d at 827-28; *Ross,* 417 U.S. at 609, 41 L. Ed. 2d at 350 (" 'Due Process' emphasizes fairness between the State and the individual dealing with the State . . . ."); *North Carolina v. Pearce,* 395 U.S. 711, 724-25, 23 L. Ed. 2d 656, 669 (1969) (While no *per se* constitutional right to appeal exists, once a state establishes an appellate forum it must assure access to it upon terms and conditions equally applicable and available to all.) (citations omitted); *Rinaldi v. Yeager,* 384 U.S. 305, 310-11, 16 L. Ed. 2d 577, 581 (1966) ("This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.") (citations omitted); *Douglas v. California,* 372 U.S. 353, 355, 9 L. Ed. 2d 811, 813-14 (1963) (citing *Griffin,* 351 U.S. at 19, 100 L. Ed. at 899); *Griffin,* 351 U.S. at 17, 100 L. Ed. at 898 ("Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' " (quoting *Chambers v. Florida,* 309 U.S. 227, 241, 84 L. Ed. 716, 724 (1940))).

The North Carolina Constitution does not mandate that this state provide appellate review of criminal convictions. *See* N.C. Const. arts. I & IV; *see also Gunter v. Town of Sanford,* 186 N.C. 452, 457-58, 120 S.E. 41, 44 (1923) ("[P]laintiffs present the question whether the right of appeal is essential to due process of law. The question has frequently been considered by the courts and answered in the negative."); *State v. Pulliam,* 184 N.C. 681, 683, 114 S.E. 394, 395 (1922) (The only appeal provided by the North Carolina Constitution is Article I, Section 13: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. The Legislature may, however, provide other means of trial for petty misdemeanors with the right of appeal."); *State v. Webb,* 155 N.C. 426, 431, 70 S.E. 1064, 1066 (1911) (overruling argument that

appeals are constitutionally provided for "under and by virtue of the first clause of [Article IV, Section 8 of the North Carolina Constitution], 'The Supreme Court shall have jurisdiction to hear, upon appeal, any decision of the court below.' ").

Similar to federal procedure, a North Carolina criminal defendant's right to appeal a conviction is provided entirely by statute. *In re Halifax Paper Co.*, 259 N.C. 589, 592, 131 S.E.2d 441, 444 (1963) ("There is no inherent or inalienable right of appeal from an inferior court to a superior court or from a superior court to the Supreme Court."); *State v. Blades*, 209 N.C. 56, 56, 182 S.E. 714, 714 (1935) ("The right of appeal to this Court is wholly regulated by statute . . . ."); *State v. China*, 150 N.C. App. 469, 473, 564 S.E.2d 64, 68 (2002) ("The right to appeal in a criminal proceeding is purely statutory.") (citations omitted), *appeal dismissed*, 356 N.C. 683, 577 S.E.2d 899 (2003); *State v. Hammonds*, 141 N.C. App. 152, 164, 541 S.E.2d 166, 175 (2000) (acknowledging the court's research did not disclose either North Carolina or United States Supreme Court precedent recognizing a constitutional right to a speedy appeal), *aff'd per curiam*, 354 N.C. 353, 554 S.E.2d 645 (2001), *cert. denied*, 536 U.S. 907, 153 L. Ed. 2d 184 (2002); *State v. Shoff*, 118 N.C. App. 724, 725, 456 S.E.2d 875, 876 (1995) ("The right to appeal in a criminal proceeding is purely statutory." (citing *Abney v. United States*, 431 U.S. 651, 656, 52 L. Ed. 2d 651, 658 (1977))), *aff'd per curiam*, 342 N.C. 638, 466 S.E.2d 277 (1996); *see* N.C. R. App. P. 4(a) ("Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a criminal action may take appeal . . . .").

The authority for appellate review in criminal proceedings is found in the North Carolina General Statutes and Rules of Appellate Procedure. *See* N.C.G.S. § 15A-1444(d) (2005) ("Procedures for appeal to the appellate division are as provided in this Article, the rules of the appellate division, and Chapter 7A of the General Statutes. The appeal must be perfected and conducted in accordance with the requirements of those provisions."). Specifically, section 15A-1444 of the Criminal Procedure Act specifies "When defendant may appeal," and section 7A-27 of the Judicial Department Chapter outlines "Appeals of right from the courts of the trial divisions." N.C.G.S. § 15A-1444; N.C.G.S. § 7A-27 (2005). The Rules of Appellate Procedure "govern . . . in all appeals from the courts of the trial division to the courts of the appellate division . . . ." N.C. R. App. P. 1(a); *Pruitt v. Wood*, 199 N.C. 788, 789, 156 S.E. 126, 127 (1930) ("[T]he rules of this Court, governing appeals, are mandatory

and not directory." (citing *Calvert v. Carstarphen*, 133 N.C. 25, 27, 45 S.E. 353, 354 (1903))). A criminal defendant may appeal from entry of final judgment or order by a superior or district court in accordance with the provisions of these two statutes and the rules of appellate procedure. *See Shoff*, 118 N.C. App. at 725, 456 S.E.2d at 876-77; *see also* N.C. R. App. P. 4.

Specific to the issue at bar, Rule 7 of the North Carolina Rules of Appellate Procedure governs preparation of the trial transcript and the court reporter's duties. It states in pertinent part:

> (a) *Ordering the transcript.*
>
> . . . .
>
> (2) *Criminal cases. . . .*

Where there is an order establishing the indigency of the defendant, unless the trial judge's appeal entries specify or the parties stipulate that parts of the proceedings need not be transcribed, the clerk of the trial tribunal shall order a transcript of the proceedings by serving the following documents upon either the court reporter(s) or neutral person designated to prepare the transcript: a copy of the appeal entries signed by the judge; a copy of the trial court's order establishing indigency for the appeal; and a statement setting out the number of copies of the transcript required and the name, address and telephone number of appellant's counsel. The clerk shall make an entry of record reflecting the date these documents were served upon the court reporter(s) or transcriptionist.

> (b) *Production and delivery of transcript.*
>
> . . . .

In criminal cases where there is an order establishing the indigency of the defendant for the appeal: from the date the clerk of the trial court serves the order upon the person designated to prepare the transcript, that person shall have 60 days to procure and deliver the transcript in non-capital cases and 120 days to produce and deliver the transcript in capitally tried cases.

> . . . .

Except in capitally tried criminal cases which result in the imposition of a sentence of death, (t)he trial tribunal, in its discretion, and for good cause shown by the appellant may extend

the time to produce the transcript for an additional 30 days. Any subsequent motions for additional time required to produce the transcript may only be made to the appellate court to which appeal has been taken. All motions for extension of time to produce the transcript in capitally tried cases resulting in the imposition of a sentence of death, shall be made directly to the Supreme Court by the appellant. Where the clerk's order of transcript is accompanied by the trial court's order establishing the indigency of the appellant and directing the transcript to be prepared at State expense, the time for production of the transcript commences seven days after the filing of the clerk's order of transcript.

(2) The court reporter, or person designated to prepare the transcript, shall deliver the completed transcript to the parties, as ordered, within the time provided by this rule, unless an extension of time has been granted under Rule 7(b)(1) or Rule 27(c). The court reporter or transcriptionist shall certify to the clerk of the trial tribunal that the parties' copies have been so delivered, and shall send a copy of such certification to the appellate court to which the appeal is taken. The appealing party shall retain custody of the original transcript and shall transmit the original transcript to the appellate court upon settlement of the record on appeal.

N.C. R. App. P. 7.

Under North Carolina Rules of Appellate Procedure 7, 9, and 11, the burden is placed upon the appellant to commence settlement of the record on appeal, including providing a verbatim transcript if available. *See State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644-45 (1983) ("It is the appellant's duty and responsibility to see that the record is in proper form and complete." (citing N.C. R. App. P. 9 and *State v. Atkinson*, 275 N.C. 288, 167 S.E.2d 241 (1969), *death sentence vacated*, 403 U.S. 948, 29 L. Ed. 2d 859 (1971))); *State v. Milby*, 302 N.C. 137, 141, 273 S.E.2d 716, 719 (1981) ("It is the duty of an appellant to see that the record on appeal is properly made up and transmitted to the appellate court." (citing *Atkinson*, 275 N.C. 288, 167 S.E.2d 241)); *Hicks v. Alford*, 156 N.C. App. 384, 389-90, 576 S.E.2d 410, 414 (2003) ("It is the duty of the appellant to ensure that the record is complete." (citing *Alston*, 307 N.C. at 341, 298 S.E.2d at 644)); *McLeod v. Faust*, 92 N.C. App. 370, 371, 374 S.E.2d 417, 418 (1988) ("Plaintiff, as appellant, bears the burden of seeing that the record on appeal is properly settled and filed with this Court." (citing

*State v. Gilliam*, 33 N.C. App. 490, 235 S.E.2d 421 (1977))). Once the record on appeal and verbatim transcript are settled, Rule 9(c)(3)b. states the "appellant shall cause the settled, verbatim transcript to be filed, contemporaneously with the record on appeal, with the clerk of the appellate court in which the appeal is docketed." N.C. R. App. P. 9(c)(3)b. The record on appeal and verbatim transcript must be filed by the appellant within fifteen days after the record's settlement. N.C. R. App. P. 12(a); *Chamberlain v. Thames*, 130 N.C. App. 324, 327, 502 S.E.2d 631, 633 ("Defendant's failure to supervise the process of his appeal has deprived him of his right to appellate review . . . ."), *abrogated by*, 131 N.C. App. 705, 509 S.E.2d 443 (1998). In the case *sub judice*, defendant, as the appellant, bore the burden of proceeding and of ensuring that the record on appeal and verbatim transcript were complete, properly settled, in correct form, and filed with the appropriate appellate court by the applicable deadlines.

On 19 February 1998, the trial court designated defendant as indigent in the Appellate Entries following his conviction. On 20 February 1998, the deputy clerk ordered a transcript of the trial proceedings by personally serving King a copy of the Appellate Entries signed by the trial judge, which included the order designating defendant as indigent and appointing appellate counsel and indicating counsel's address. King completed defendant's trial transcript on 30 January 2004 and mailed it to the trial court on 2 February 2004. The Court of Appeals received the transcript on 23 April 2004, heard defendant's appeal on 12 January 2005, and filed its opinion on 17 May 2005. There is no evidence or indication in the record that either King or defendant requested an extension of time beyond the prescribed sixty days to complete the transcription pursuant to Rules 7 and 27 of the North Carolina Rules of Appellate Procedure. There is no indication the State, the trial court, the clerk of superior court, or the clerk of the Court of Appeals inquired of King as to the status of the trial transcript. It would be out of the ordinary for the State, the trial court, the clerk of superior court, or the clerk of the Court of Appeals to do so. There is also no indication defendant or his counsel ever requested the State or the trial court to become further involved. Nevertheless, defendant asserts this failure by the State, to make any efforts to avoid the considerable delay in completing the trial transcript and subsequently his appeal, violated his due process rights.

The United States Supreme Court established a four-factor balancing test designed to analyze alleged violations of an individual's

Sixth Amendment right to a speedy trial in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117 (1972). The four factors are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* This Court has adopted the *Barker* factors when considering alleged violations of the right to a speedy trial. *See, e.g., State v. Spivey*, 357 N.C. 114, 118, 579 S.E.2d 251, 254 (2003); *State v. Grooms*, 353 N.C. 50, 62, 540 S.E.2d 713, 721 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001); *State v. Jones*, 310 N.C. 716, 721, 314 S.E.2d 529, 532-33 (1984); *State v. O'Kelly*, 285 N.C. 368, 371, 204 S.E.2d 672, 674 (1974).

When presented with the issue of whether an individual's rights were violated due to prevention or delay of an appeal, federal and state courts of this and other jurisdictions have almost uniformly applied the *Barker* test in considering appellate proceedings. *China*, 150 N.C. App. at 473-75, 564 S.E.2d at 68-69; *Hammonds*, 141 N.C. App. at 164, 541 S.E.2d at 175; *United States v. Smith*, 94 F.3d 204, 207 (6th Cir. 1996), *cert. denied*, 519 U.S. 1133, 136 L. Ed. 2d 877 (1997); *United States v. Hawkins*, 78 F.3d 348, 350-51 (8th Cir.), *cert. denied*, 519 U.S. 844, 136 L. Ed. 2d 76 (1996); *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990); *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.), *cert. denied*, 498 U.S. 963, 112 L. Ed. 2d 407 (1990); *Burkett v. Cunningham*, 826 F.2d 1208, 1222 (3d Cir. 1987); *United States v. Johnson*, 732 F.2d 379, 381-82 (4th Cir.), *cert. denied*, 469 U.S. 1033, 83 L. Ed. 2d 396 (1984); *DeLancy v. Caldwell*, 741 F.2d 1246, 1247-48 (10th Cir. 1984); *Rheuark v. Shaw*, 628 F.2d 297, 303 (5th Cir. 1980), *cert. denied*, 450 U.S. 931, 67 L. Ed. 2d 365 (1981); *Gaines v. Manson*, 194 Conn. 510, 521, 481 A.2d 1084, 1092 (1984); *People v. Sistrunk*, 259 Ill. App. 3d 40, 54, 630 N.E.2d 1213, 1223, *appeal denied*, 157 Ill. 2d 517, 642 N.E.2d 1298 (1994); *Allen v. State*, 686 N.E.2d 760, 783 (Ind. 1997), *cert. denied*, 525 U.S. 1073, 142 L. Ed. 2d 667 (1999); *State v. Harper*, 675 A.2d 495, 498 n.5 (Me. 1996); *Daniel v. State*, 2003 WY 132, ¶ 43, 78 P.3d 205, 218-19 (Wyo. 2003), *cert. denied*, 540 U.S. 1205, 158 L. Ed. 2d 127 (2004). The Court of Appeals' majority opinion below utilized the *Barker* test to analyze defendant's due process claim. *Berryman*, 170 N.C. App. at ——, 612 S.E.2d at 676-78. We agree with the use of the four *Barker* factors by both our Court of Appeals and other jurisdictions to address issues concerning whether an individual's rights to an appeal were violated.

As noted earlier, the *Barker* factors are: "(1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his

right . . . ; and (4) prejudice to defendant resulting from the delay." *Hammonds*, 141 N.C. App. at 158, 541 S.E.2d at 172 (citing *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 116-17). "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118; *see also China*, 150 N.C. App. at 473, 564 S.E.2d at 68; *Hammonds*, 141 N.C. App. at 158, 541 S.E.2d at 172.

When considered in Sixth Amendment cases, the first factor, the length of delay, "is not *per se* determinative of whether defendant has been deprived of his right to a speedy trial." *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255 (citing *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994)). The length of delay is a triggering mechanism that requires further inquiry into the other *Barker* factors only after the delay is deemed presumptively prejudicial. *Hammonds*, 141 N.C. App. at 159, 541 S.E.2d at 172; *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 117 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); *State v. Hill*, 287 N.C. 207, 211, 214 S.E.2d 67, 71 (1975) ("[W]e elect to view this factor merely as the 'triggering mechanism' that precipitates the speedy trial issue. Viewed as such, its significance in the balance is not great.").

Here, over six years passed between defendant's conviction, King's production of the trial transcript, and appellate review by the Court of Appeals. Such an egregious delay is clearly sufficient to trigger examination of the remaining factors. *See China*, 150 N.C. App. at 474, 564 S.E.2d at 68 ("An approximately seven year delay in processing defendant's appeal is lengthy and sufficient to examine the remaining factors."); *Hammonds*, 141 N.C. App. at 164, 541 S.E.2d at 175 ("The length of the delay, approximately two and a half years . . . is . . . sufficient to trigger the examination of the remaining factors."); *Johnson*, 732 F.2d at 382 ("With regard to the first of [the *Barker*] factors, the two-year delay in this case is in the range of magnitude of delay as a result of which courts have indicated that due process may have been denied."); *Rheuark*, 628 F.2d at 302-03 ("[W]e assume without deciding . . . a delay of nearly two years . . . exceeds the limits of due process.").

In the instant case, defendant asserts that establishing a justifiable reason and cause of the six-year delay in completing his appeal, the second *Barker* factor, rests with the State. He argues in his brief

that "[t]hroughout this time, the State is aware of the situation and makes no effort to obtain the transcript." Contrary to defendant's assertion and consistent with analyses of delays during the trial phase of a criminal proceeding, the burden is on the defendant to show the delay resulted from intentional conduct or neglect by the State. *See Spivey,* 357 N.C. at 119, 579 S.E.2d at 255 ("[The] defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution." (citing *Webster,* 337 N.C. at 679, 447 S.E.2d at 351)); *State v. McKoy,* 294 N.C. 134, 141, 240 S.E.2d 383, 388 (1978) ("[T]he circumstances of each particular case must determine whether a speedy trial has been afforded or denied, and the burden is on an accused who asserts denial of a speedy trial to show that the delay was due to the neglect or wilfulness of the prosecution.").

After thorough review of the record on appeal and the parties' briefs, we agree with the majority opinion of the Court of Appeals that "[t]he record is devoid of any indication as to why the extensive delay took place." *Berryman,* 170 N.C. App. at ——, 612 S.E.2d at 677. The trial court proceeded properly and ordered a trial transcript from King on 20 February 1998 after defendant gave notice of appeal in open court. N.C. R. App. P. 7. No motions for extensions of time to complete the transcript were submitted to either the trial court or the Court of Appeals. *See* N.C. R. App. P. 7(b); *see also* N.C. R. App. P. 27(c). The only documented evidence present in the record from that six-year period is defense counsel's letter, written request, and affidavit. However, this evidence does not shed light on the cause of the delay. Thus, there is no evidence to support defendant's assertion that the State acted willfully to delay or neglected production of the transcript, a fact conceded by the Court of Appeals' dissenting opinion. *Berryman,* 170 N.C. App. at ——, 612 S.E.2d at 678 (Timmons-Goodson, J., dissenting) ("In the instant case, I recognize that the delay was not due to the fault of the prosecutor."). Defendant simply has failed to meet his burden of proof on this point. *See Spivey,* 357 N.C. at 119, 579 S.E.2d at 255; *see also McKoy,* 294 N.C. at 141, 240 S.E.2d at 388.

As to the third *Barker* factor, defendant argues he never acquiesced in the six-year delay and instead asserted his right to prompt appellate review by and through defense counsel's submission of numerous requests and inquiries. Under our Appellate Rules and case law, it is the appellant's responsibility to compile a proposed record on appeal which includes the verbatim transcript, to work with the

State towards settlement of the record on appeal, and then to submit the completed record to the Court of Appeals. N.C. R. App. P. 9, 11 & 12; *Alston*, 307 N.C. at 341, 298 S.E.2d at 644 ("It is the appellant's duty and responsibility to see that the record is in proper form and complete."); *China*, 150 N.C. App. at 474-75, 564 S.E.2d at 68 ("Defendant's failure to stay informed concerning the status of his appeal of right and to assert his rights weighs heavily against his contention that his due process rights were violated."); *McLeod*, 92 N.C. App. at 371, 374 S.E.2d at 418 ("Plaintiff, as appellant, bears the burden of seeing that the record on appeal is properly settled and filed with this Court.").

The record includes a letter, a written request, and an affidavit drafted by defense counsel which document defendant's assertions of his right to an appeal. Defense counsel made approximately nine inquiries to King regarding the transcript during 1999 and 2000. However, there is a noticeable gap between defense counsel's "Review dates/check status of transcript" on 18 December 2000 and "telephone msg. to J. King" on 18 November 2003. Defense counsel then placed two more phone calls to King between 19 November 2003 and 22 January 2004. On 21 November 2003, King telephoned defense counsel. The transcript was completed on 30 January 2004.

Defense counsel averaged two and one half inquiries per year during the six years defendant awaited appellate review. None of defense counsel's efforts were directed to the State, to the trial court, to the clerk of superior court, or to the clerk of the Court of Appeals. *See Hammonds*, 141 N.C. App. at 157, 541 S.E.2d at 171 (defendant filed three separate motions for new trial after extensions granted to court reporter expired); *Johnson*, 732 F.2d at 382 (defendant filed petitions with appellate court to obtain transcript). Instead, each effort in the instant case was addressed to King. There is no evidence that defendant, himself, asserted to anyone his right to appellate review. As the Court of Appeals noted in both this case and in *China*, defendant or his attorney could have contacted the trial court or the clerk of the Court of Appeals. *Berryman*, 170 N.C. App. at ——, 612 S.E.2d at 677; *China*, 150 N.C. App. at 474, 564 S.E.2d at 68. Although defense counsel made some efforts to expedite defendant's appeal, neither he nor defendant satisfied the mandates of the Appellate Rules and case law to compile a proposed record on appeal including the verbatim transcript, work with the State towards settlement of the record on appeal, and then submit it to the Court of Appeals. N.C. R. App. P. 9, 11 & 12; *Alston*, 307 N.C. at 341, 298 S.E.2d at 644; *China*,

150 N.C. App. at 474-75, 564 S.E.2d at 68; *McLeod,* 92 N.C. App. at 371, 374 S.E.2d at 418. Defendant did not sufficiently assert his right to an appeal.

In considering whether defendant has been prejudiced because of a delay between indictment and trial, this Court noted that a speedy trial serves: " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " *Webster,* 337 N.C. at 680-81, 447 S.E.2d at 352 (quoting *Barker,* 407 U.S. at 532, 33 L. Ed. 2d at 118). Courts addressing the issue at bar have adopted the same analysis to show prejudice. *China,* 150 N.C. App. at 475, 564 S.E.2d at 69; *Johnson,* 732 F.2d at 382; *see also* N.C.G.S. §§ 15A-1442 & -1443 (2005) (Appellate courts may grant relief in criminal appeals only if defendant can prove he suffered prejudice from error.).

Initially, with respect to the prejudice factor, we note defendant's assignments of error to the Court of Appeals pertaining to his trial are not before this Court based on the dissent. *See* N.C. R. App. P. 16(b); *see also State v. Hooper,* 318 N.C. 680, 681-82, 351 S.E.2d 286, 287 (1987). The Court of Appeals' majority opinion held that defendant's assignments of error aside from his right to a timely appeal argument were without merit. *Berryman,* 170 N.C. App. at ——, 612 S.E.2d at 674-76. Accordingly, the first interest or concern cited above, prevention of oppressive pretrial incarceration, is not applicable to the case at bar.

Regarding the second interest, defendant argues:

> Waiting for the ax to fall, an inmate suffers the anxiety of uncertainty while on appeal. Once he finds out the decision, he can go on to deal with it. Only then can he turn his concentration, for example, to long term prison programs. . . . Berryman's anxiety was maximized by the extra long delay.

We agree with the Court of Appeals' majority opinion that a review of the record does not divulge any evidence to support defendant's allegation of experiencing "maximum anxiety." *Berryman,* 170 N.C. App. at ——, 612 S.E.2d at 678 (quoting *China,* 150 N.C. App. at 475, 564 S.E.2d at 69 (" 'Defendant has failed to show that he suffered any more anxiety than any other appellant.' ")).

Finally, concerning the third interest, defendant argues the delay prevented "any possibility of meaningful appellate review" of his case. He also asserts the public suffers from such delays, particularly

crime victims and other interested parties. We are not insensitive to the potential effects of a long delay in completing an appeal on a defendant, other interested parties, and the public at large. However, defendant has totally failed to provide the Court of Appeals or this Court with any specific evidence supporting these contentions relating to his case. *See Berryman*, 170 N.C. App. at ——, 612 S.E.2d at 678.

This Court has also noted in cases involving the Sixth Amendment right to a speedy trial that although a defendant's failure to assert his right to a speedy trial earlier in the process does not preclude the argument later, such failure is considered when determining whether the defendant was prejudiced. *Webster*, 337 N.C. at 680, 447 S.E.2d at 352 (citing *Barker*, 407 U.S. at 531-32, 33 L. Ed. 2d at 117-18). Having determined that defendant failed to sufficiently assert his right to an appeal, we conclude that the prejudice from which defendant allegedly suffered was not so great as to inspire him or his counsel to act. Thus, after considering the three recognized protected interests and defendant's corresponding arguments, we conclude defendant has not shown through supportive evidence, and our review of the record fails to disclose, that he was prejudiced by the six-year delay. *See* N.C.G.S. §§ 15A-1442 & -1443.

Appellate review in a criminal proceeding is provided and governed by the North Carolina General Statutes and Appellate Rules, not the United States or the North Carolina Constitutions. Alleged violations of the right to an appeal shall be considered under the four-factor analysis enunciated by the United States Supreme Court in *Barker*. After extensive review of defendant's case and arguments in light of *Barker*, we hold defendant's statutory and due process rights were not violated by the six-year delay in producing his trial transcript. The decision of the Court of Appeals is affirmed.

AFFIRMED.

BRADY, Justice dissenting.

The indefensible position of the State was announced at oral arguments by State's counsel: "Let's posit a delay of 20 years; let's posit a delay of 50 years . . . the right doesn't exist." I cannot condone, much less join, the decision of the majority in this case or acquiesce to the ideas of State's counsel at oral arguments. We have appellate rules for a reason, and those rules must be followed or the principles and policies upon which these rules are based fall to the wayside.

Because I believe this Court should promote the quick and fair administration of justice, I cannot join my colleagues in holding no violation of defendant's rights occurred when an agent of the State delayed his appeal by six years. The majority opinion extends beyond the outer limits of justice, announcing a benchmark that is constitutionally inadequate. This unenviable position merely gives lip service to an important right that is essential to our criminal justice system. As I believe justice cries out for more, I respectfully dissent.

The State's argument is: As no constitutional right exists to *appeal* one's conviction, there can be no constitutional right to a *speedy appeal.* This reasoning does not comport with our jurisprudence or the jurisprudence of the Supreme Court of the United States. While there is no federal constitutional right to an appeal of a criminal conviction, *see Abney v. United States,* 431 U.S. 651, 656 (1977), in North Carolina there is a statutory right of appeal. *See* N.C.G.S. § 15A-1444 (2005); *State v. Blades,* 209 N.C. 56, *passim,* 182 S.E. 714, *passim* (1935). When the State grants a person a property or a liberty interest, the Fourteenth Amendment to the United States Constitution requires the interest not be later deprived without due process of law, and many courts have recognized this principle as applicable to appeals. *See, e.g., Douglas v. California,* 372 U.S. 353 (1963); *United States v. Johnson,* 732 F.2d 379 (4th Cir.), *cert. denied,* 469 U.S. 1033 (1984); *Rheuark v. Shaw,* 628 F.2d 297 (5th Cir. 1980), *cert. denied,* 450 U.S. 931 (1981).

Additionally, our North Carolina Constitution provides protection for our citizens in the form of the law of the land clause: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. In this State, the North Carolina Rules of Appellate Procedure are the laws of the land. *Id.* art. IV § 13(2). In fact, any statute which violates of the Rules of Appellate Procedure cannot stand because it also violates the Constitution. *See State v. Elam,* 302 N.C. 157, 160, 273 S.E.2d 661, 664 (1981). The rules provide, in non-capital criminal cases, a transcript must be procured and delivered within sixty days from the "date the clerk of the trial court serves the order upon" the court reporter. N.C. R. App. P. 7(b). Laws are meaningless if not enforced. The citizenry should not be expected to follow the law while the agents of the State disregard it. Court reporters are not totally immune from any responsibility under the law. I cannot join the majority's opinion, and I anxiously await discovery of the next

**STATE v. BERRYMAN**

[360 N.C. 209 (2006)]

rule which will be pushed to the side to the detriment of the good will of the judiciary and the rights of our citizens.

There are compelling reasons why we should recognize a right to a speedy appeal based upon due process jurisprudence. In 1962 the Supreme Court of the United States said:

> When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged. Second, the preference to be accorded criminal appeals recognizes the need for speedy disposition of such cases. Delay in the final judgment of conviction, including its appellate review, unquestionably erodes the efficacy of law enforcement.

*Coppedge v. United States*, 369 U.S. 438, 449 (1962) (footnote omitted). This language is equally persuasive in this case. The very reason our appellate rules provide a sixty day period for the provision of a transcript is so the courts do not become clogged. It is important we keep our courts open and appeals speedy because "[d]elay . . . erodes the efficacy of law enforcement." *Id.* A six-year delay certainly casts doubt upon our system of appellate review and is totally unacceptable. *See Guam v. Olsen*, 462 F. Supp. 608, 613 (D. Guam App. Div. 1978) (reversing a conviction and ordering an acquittal "turning loose a presumptively guilty [d]efendant, in order to vindicate the public policies involved" because of a two-year delay in transcript preparation), *cert. denied*, 444 U.S. 1016 (1980).

I agree with the majority and other persuasive jurisdictions that the test of *Barker v. Wingo* is the proper test in speedy appeal cases. 407 U.S. 514 (1972). The Supreme Court of the United States set out three protected interests in *Barker*: Prevention of oppressive pretrial incarceration, minimization of anxiety and concern of the defendant, and impairment of the defense. 407 U.S. at 532.

In speedy appeal cases, criminal defendants wait in prison unless they are lucky enough and have the resources and circumstances to be released on bail, a rare occurrence in North Carolina. *See* N.C.G.S. § 15A-536 (2005). In prison, there is no Blackberry, there is no Internet, and there are no iPods. The inmate's liberty is significantly

curtailed. Except for capital punishment, confinement to prison is the most serious deprivation of life and liberty our law allows. Therefore, it is vital we work quickly on appeal to provide potentially wrongfully or unconstitutionally confined defendants the relief required to right the wrong in a timely manner. If a defendant's conviction should be reversed, every day spent in prison are days that can never be given back. Should a defendant be entitled to a new trial, evidence wastes away in the lockers, memories fade, and recollections become clouded while the defendant waits years for the preparation of his transcript. These are not merely hypothetical, but real situations that will occur because of the majority's failure to impose a proper sanction for the violation of defendant's rights. The United States Court of Appeals for the Fifth Circuit spoke well when it said: "The cancerous malady of delay, which haunts our judicial system by postponing the rectification of wrong and the vindication of those unjustly convicted, must be excised from the judicial process at every stage." *Rheuark*, 628 F.2d at 304.

Therefore, I agree the similarities in the interests of a speedy trial and the interests of speedy appeals are sufficiently similar to use the *Barker v. Wingo* balancing test to determine when a defendant is denied his constitutional right to a speedy appeal. This balancing test considers the following factors: (1) The length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See Barker*, 407 U.S. at 530. Here we have an extraordinary time of delay. Six years is longer than either of the time periods in *Rheuark* (two years) or *Johnson* (two years). Six years is longer than the five year delay before trial in *Barker*. Six years is certainly a long enough period of time to implicate the right to a speedy appeal.

As to the second prong of the *Barker* test, the reason for the delay is not exactly apparent; however, it was no fault of defendant's. At least ten inquiries were made seeking the transcript from the court reporter before the transcript was finally delivered. All we know is that for some reason, the court reporter was unable to fulfill his duties in getting the transcript to defendant in time for him to properly perfect the record on appeal.

This seems to be a systemic problem. Chief Justice Lake delivered these words to the General Assembly on 7 April 2003:

Two years ago, in my State of the Judiciary, I gave the General Assembly one clear example of where we have been far less

than cost-efficient, and have flat-out failed the people of North Carolina. I stated that it is not an infrequent occurrence for a superior court judge to open court on a Monday morning for the call of the calendar and then the trial of an important case. The attorneys are in place, the litigants are there, the witnesses are there, the clerk of court is there, and the courtroom is filled to overflowing with prospective jurors from throughout the county. The case is ready to proceed—with one notable exception. <u>There is no court reporter.</u> The entire process disintegrates, not just for that important case, but frequently for the entire session of court. This is because we did not have then and we do not have now sufficient court reporters to cover our judges in court, and the funding for any kind of reliable video or audio backup has not been forthcoming.

The damage from this kind of breakdown is measured not just in the cost of wasted time and resources, but also in the enormous amount of bad will and hostility generated and directed toward our court system by all those citizens who have been made to suffer the wasteful loss of valuable time out of their lives. The cost of a court reporter is minimal compared to this. Also, the lack of sufficient court reporter resources is probably the single factor most responsible for extreme delay in appellate review of cases.

Chief Justice I. Beverly Lake, Jr., 2003 State of the Judiciary to the North Carolina General Assembly, 6-7 (April 7, 2003). The Chief Justice went on to detail certain cases before this Court in which the lack of adequate and competent court reporters severely delayed the resolution of appeals in death penalty cases. *Id.* at 7-9. In his final mention of court reporters in this speech, the Chief Justice noted:

At the Court of Appeals level, there are motions in hundreds of cases each year for extensions of time for preparation of the transcript by court reporters, who obviously must prepare their transcripts for the appellate courts when they are not taking testimony in the trial courts. Two years ago, I asked the General Assembly to give us at least four additional court reporters <u>as a priority matter.</u> Today, we have a net loss of one.

*Id.* at 9.

This situation is no better two years later. *See* Chief Justice I. Beverly Lake, Jr., Remarks of Chief Justice I. Beverly Lake, Jr.

to the "Judicial Advocates" Meetings (Sept. 26-28 2005). The North Carolina Constitution provides: "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government." N.C. Const. art. IV, § 1. In his speeches, the Chief Justice iterated his position that the underfunding of the judiciary by the General Assembly unconstitutionally deprives the judicial department of the power to fulfill its duties in the state. I make one further contention—the vast underfunding of the judicial department insofar as it causes years-long delays in the complete resolution of criminal cases violates the Due Process Clause of the United States Constitution and the "law of the land" clause of the North Carolina Constitution. Yet, as recognized by one federal court: "We cannot hold the reporter in contempt; we cannot mandate the Superior Court to hire more reporters; we cannot mandate the Legislature to appropriate more money for that purpose." *Olsen*, 462 F. Supp. at 614. However, "[n]o administrative or budgetary problem in connection with the employment of court reporters can be allowed to take precedence over the . . . public interests at stake in this case." *Id.* at 613.

The majority asserts defendant has shown no evidence supporting his contention the State acted willfully to delay or neglect the production of the transcript. However, it is obvious that an agent of the State was neglectful in preparation of the transcript. Official court reporters are provided for by statute, and the court reporter in this case, Johnie L. King, III, was an employee of the Administrative Office of the Courts and, therefore, an agent of the State. *See* N.C.G.S. § 7A-95 (2005). "Few positions in a society governed by law are more important than that of a court reporter." *See Lanier v. State*, 684 So. 2d 93, 101 (Miss. 1996) (holding a defendant would be allowed, on retrial, to argue the court reporter's "negligence, incompetence or malfeasance" in failing to provide a transcript in three and one-half years prejudiced his defense). There is no other explanation than the reporter did not finish the transcript on time. A six-year delay in the preparation of a one hundred forty-two page transcript can come about only through willful action or neglect of the preparation of the transcript. "[D]elays caused by . . . court reporters are attributable to the government for purposes of determining whether a defendant has been deprived of due process on appeal." *United States v. Wilson*, 16 F.3d 1027, 1030 (9th Cir. 1994). I refuse to concur with a result that holds a defendant's rights were not violated merely because it was

one state actor, the court reporter, who was neglectful, as opposed to another state actor, such as the trial court or the prosecutor.[1]

The third factor here, defendant's assertion of his right, does not weigh against defendant. What else was the defendant to do in this case besides make numerous requests for transcripts? It is not essential in a speedy trial case for the defendant to assert his right to a speedy trial, and the failure to do so is not an express waiver, however, it is a factor to consider. *See Barker*, 407 U.S. at 531-32. However, as the Court noted in *Barker*, "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. Defendant asserted his right to a speedy appeal and its violation by both seeking quick preparation of the transcript and asserting the right before the Court of Appeals. I believe defendant did all that was required of him by obtaining an order from the trial court ordering the preparation of the transcript and by making numerous oral and written requests for the delivery of the transcript over a six-year period. This Court has historically required defendants to cross every "t" and dot every "i" in preserving issues and making arguments before this Court. While the majority acknowledges this delay is egregious, it turns a blind eye, allowing the court reporter to blatantly disregard his professional and legal duty to prepare a one hundred forty-two page transcript in a specified period, with no fear of reprisal. It is not a criminal defendant's duty to manage and supervise the court reporters of this State. *See Allen v. State*, 686 N.E.2d 760, 784 (Ind. 1997), *cert. denied*, 525 U.S. 1073 (1999). Perhaps defendant should have requested a day-pass from the warden at Central Prison to travel to the Wake County courthouse and prepare his transcript himself!

The final prong of the *Barker* test is whether the defendant suffered prejudice because of the delay. The majority uses spurious logic here to say that because the Court of Appeals found defendant's appeal without merit he suffered no prejudice. I once again draw an analogy from the realm of speedy trial cases and note the Supreme Court of the United States held in *Doggett v. United States*:

> [A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim. . . . Thus, we generally have to recognize that excessive delay presumptively compromises the reliability

---

1. Even if the delay is in part attributable to defendant's counsel, I cannot place the responsibility for the inordinate delay upon defendant when the blame would lie with defendant's ineffective counsel. *See e.g.*, *Simmons v. Beyer*, 44 F.3d 1160 (3d Cir. 1995), *cert. denied*, 516 U.S. 905.

of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

505 U.S. 647, 655-56 (1992) (citations omitted). Here, the length of delay is totally unacceptable and without excuse. Six years for the preparation of any transcript exceeds all bounds of reasonableness and decency in the quick prosecution and resolution of criminal matters.

The time allowed by our law for the preparation of a non-capital criminal transcript is sixty days. Here, it took nearly two thousand two hundred days to prepare a one hundred forty-two page transcript, or approximately thirty-six times longer than allowed. "When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Id.* at 658 (footnotes and citations omitted). If six times the time period is sufficient to find presumptive prejudice, thirty-six times the time period allowed by law is certainly sufficient.

The majority incorrectly places the burden on defendant to prove the reason for delay and the prejudice resulting therefrom. This presumption of prejudice must be rebutted by the State and not merely by pointing to the lack of evidence of actual prejudice—for this is the exact problem the Supreme Court of the United States identified in *Doggett*: It is difficult for a defendant to demonstrate prejudice because a delay that results in the fogging of memories may benefit either side. Here, the State has presented nothing that rebuts this presumption. In addition, this presumption of prejudice should apply in speedy appeal cases because in the event a defendant is entitled to a new trial, the longer the appeal takes, the more likely prejudice will result in the clouding of witnesses' memories along with the deterioration of evidence.

Because all the *Barker* factors weigh in favor of defendant, I would hold he is entitled to relief. As the majority's decision today encourages unreasonable delay in the process of criminal justice, I respectfully dissent and would reverse and remand to the Court of Appeals with instructions to fashion a proper remedy for this constitutional violation.