STATE v. NEVILLS

[158 N.C. App. 733 (2003)]

No. COA02-774

(Filed 1 July 2003)

**Evidence— plea agreement of codefendant—false evidence— no expression of opinion by trial court**

The trial court did not commit structural or plain error in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by admitting evidence that the trial court had consolidated charges against a codefendant for sentencing on the condition that she give truthful testimony in proceedings related to the victim and by allegedly giving the impression that the codefendant was testifying pursuant to an agreement with the court, because: (1) the actions of the judge and the State did not constitute presentation of known false evidence in violation of defendant's due process rights even though defendant contends the terms of the codefendant's sentencing condition were patently misleading to the jury since they improperly conveyed that the trial court possessed the authority to enter an agreement with the codefendant; (2) considering the totality of circumstances, it cannot be said that the judge expressed an impermissible opinion to the jury by permitting others to refer to the sentencing condition as an agreement; and (3) the jury was properly admonished by the trial court's instruction to carefully consider whether to believe the code-

fendant's testimony despite the court's reference to the sentencing condition as an agreement.

Appeal by defendant from judgments entered 9 November 2001 by Judge William C. Gore, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 15 May 2003.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Brian Michael Aus, for defendant-appellant.*

CALABRIA, Judge.

Carlos Darnell Nevills ("defendant") appeals judgments entered 9 November 2001 by Judge William C. Gore, Jr. ("Judge Gore") in Cumberland County Superior Court. Defendant asserts Judge Gore erred admitting evidence of codefendant, Tameika Douglas' ("Douglas") sentencing condition. We find no error.

The State's evidence tended to show the following facts. Defendant was a member of a gang known as the Crips. Debra Alice Cheeseborough ("Cheeseborough") testified that in the early morning hours of 17 August 1998, she was leaving the Bojangles restaurant where she worked when she was approached by defendant, Douglas and another gang member. Defendant put a gun to her head and ordered her into the back seat of her car. Douglas then took Cheeseborough's jewelry and money. Defendant drove off, pulled over and forced Cheeseborough into the trunk of her car. They went to the trailer of one of the gang leaders. Through the trunk, Cheeseborough could hear people going through her belongings in her car. She heard a male voice say "we have to kill her." Cheeseborough felt the weight of more people getting into the car, and the gang drove to a secluded area. There, Cheeseborough was assisted out of the trunk and shot eight times. The final bullet, shot in response to a directive to shoot Cheeseborough in the head, grazed her eyelid, went through her glasses' lens and thumb.

Douglas testified the entire gang believed Cheeseborough was dead. They determined they needed another car, and Douglas and other gang members got into Cheeseborough's car and drove around searching for new victims. After following a number of cars, they finally followed and blocked a car occupied by Susan Raye Horne Moore ("Moore") and Tracy Rose Lambert ("Lambert"). They forced

Moore and Lambert out of the car and into the trunk. Douglas took their money and jewelry. They again returned to the trailer, and the gang then drove into the country. Defendant drove Moore's car, with the women in the trunk. The gang members circled the trunk of the car containing the victims. One member assisted Lambert out, and shut Moore in the trunk. Lambert was then taken by the arm, walked away from the group, forced to her knee and shot in the head. A different member then took the gun, and helped Moore out of the car. Moore began screaming when she saw that Lambert had been killed. The man walked Moore away from the group and attempted to shoot her. After the gun jammed, he took out a knife to kill her. Moore pled, "Please don't cut me. If you are going to kill me, please just shoot me. I don't want to suffer." The man then repeatedly attempted to fire the gun, which continued to jam; on the fourth attempt, the gun fired and shot Moore in the head. The gang returned to the trailer and dispersed.

The next day, upon learning Cheeseborough was alive, defendant, Douglas and other members of the gang took Cheeseborough's car and drove to Myrtle Beach where the police subsequently apprehended the group at a motel.

Defendant was arrested, charged and convicted of numerous crimes including, *inter alia*, attempted first-degree murder, first-degree murder, first-degree kidnapping and conspiracy charges. Defendant was sentenced to a total of 1,044 months to 1,365 months in prison and two terms of life imprisonment without parole. His sentences were imposed consecutively.

Defendant argues Judge Gore committed structural and plain error by improperly admitting evidence of codefendant Douglas' sentencing condition and giving the jury the impression that Douglas was testifying pursuant to an agreement with the court. We find no error.

" '[S]tructural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *State v. Anderson*, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 113 L. Ed. 2d 302, 331 (1991)). However, our Supreme Court has recognized the rarity of structural error, and noted the United States Supreme Court has found it in only a limited number of cases wherein the essential structure of our justice system was implicated. *Id.* Structural error may arise by the absence of an impartial judge. *Id.*, (citing *Tumey v. Ohio*, 273 U.S. 510, 71 L. Ed. 749 (1927)).

Plain error is error that is " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)).

Defendant asserts a transcript of Douglas' open plea with the court was improperly admitted. After Douglas pled guilty to all the charges, the court consolidated the charges "on condition that the defendant give truthful testimony in proceedings if called upon to do so by the State of North Carolina." The court then sentenced Douglas to concurrent sentences for her crimes, including two terms of life imprisonment without parole. Pursuant to this sentencing condition, Douglas testified for the State against defendant.

## I. False Evidence

Defendant asserts the trial court committed structural and plain error because the evidence admitted and subsequent arguments constituted false evidence, and violated his constitutional right to due process. Defendant argues the "terms of the Douglas plea agreement were patently misleading to the jury" since they improperly conveyed the trial court possessed the authority to enter an agreement with Douglas. We considered these arguments in *State v. Frink*, 158 N.C. App. ——, ——, —— S.E.2d ——, —— (2003), and found them to be without merit. We hold accordingly that "we cannot find the actions of the Judge and the State constituted presentation of known false evidence in violation of defendant's due process rights." *Frink*, 158 N.C. App. at ——, —— S.E.2d at ——.

## II. Impartial Tribunal

Defendant next asserts the trial court committed structural and plain error by violating his right to an impartial tribunal since "[t]he characterization of Douglas' plea agreement was an improper expression of opinion by the trial court." Defendant believes Judge Gore expressed an impermissible opinion by routinely referring to, and permitting the reference by others to, the sentencing condition as an "agreement" with the court through which the court ordered Douglas to testify truthfully. Defendant argues "Douglas' purported 'agreement' with the trial court to give truthful testimony materially bolstered the credibility of Douglas" and the effect was to imply to the jury "Douglas must be testifying truthfully—otherwise the court would not allow her to testify."

It is well established that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2001). Our Court considers the totality of the circumstances to determine whether the judge has expressed an impermissible opinion. *State v. Wilkerson*, 148 N.C. App. 310, 317, 559 S.E.2d 5, 10, *rev'd on other grounds*, 356 N.C. 418, 571 S.E.2d 583 (2002).

Considering the totality of the circumstances, we do not find Judge Gore expressed an impermissible opinion to the jury by permitting others to refer to the sentencing condition as an agreement. Douglas testified that she was testifying in fulfillment of the condition placed upon her by Judge Gore after she pled guilty to all the crimes for which she was charged. In closing argument, the prosecutor referred to "her plea" and an order by Judge Gore to testify truthfully if called upon by the State. The court permitted the term only during cross-examination, when defense counsel referred to her sentencing condition as an "agreement," and the court corrected defense counsel that Douglas had no agreement with the State. Accordingly, we cannot find the trial court erred in permitting others to routinely characterize Douglas' open plea and sentencing condition as an agreement since it appears from the transcript such a characterization was not routine, and was made by the defense.

Finally, defendant asserts Judge Gore erred by himself referring to the "agreement" in the following jury instructions:

Now, there is evidence and, indeed, in this case it is not in dispute and all of the evidence tends to show that Tameika Douglas testified under an agreement with the Court to give truthful testimony in any proceeding against codefendants at the request of the state in order to have her charges consolidated for sentencing by the Court and it further shows that the defendant, Tameika Douglas, would receive life in prison without parole. It is uncontroverted that Tameika Douglas testified in whole or in part for this reason. You should, therefore, examine Tameika Douglas's [(sic)] testimony with great care and caution in deciding whether or not to believe it. If, after doing so, you believe her testimony in whole or in part, you should treat what you believe the same as you would treat and consider any other believable evidence.

Considering this instruction, the jury was properly admonished to carefully consider whether or not to believe Douglas' testimony, despite Judge Gore's reference to the sentencing condition as an

agreement. Therefore, we cannot find the court improperly expressed an opinion to the jury that Douglas was credible. Accordingly, we find neither structural nor plain error and overrule this assignment of error.

Defendant correctly asserts that our system is structured such that the judge remains impartial. With regard to plea bargains, the judge's role is limited to acceptance or rejection of the bargain negotiated between defendant and the State. N.C. Gen. Stat. § 15A-1021 to -1027 (2001). While our system permits the trial court judge to impose sentencing conditions, it does not permit this power to be utilized in substitution for the plea bargaining process. This Court has "expressly disapprove[d] of such a practice." *Frink,* —— N.C. App. at ——, —— S.E.2d ——. However, in the case at bar, we do not find the admission of evidence of Douglas' sentencing condition rises to the level of structural or plain error.

No error.

Judges McGEE and TYSON concur.