IN THE SUPREME COURT OF NORTH CAROLINA

No. 433PA21

Filed 23 May 2024

STATE OF NORTH CAROLINA

v.

DANIEL RAYMOND JONAS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 280 N.C. App. 511 (2021), reversing and remanding an order entered on 17 December 2019 by Judge Athena Brooks in Cabarrus County Superior Court, Cabarrus County, and remanding the case. Heard in the Supreme Court on 12 September 2023.

*Joshua H. Stein, Attorney General, by Kristin Jo Uicker, Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Amanda S. Zimmer, Assistant Appellate Defender, for defendant-appellee.*

RIGGS, Justice.

Under the General Statutes of North Carolina, a defendant has the right to appeal the denial of a motion to suppress after the entry of a guilty plea. N.C.G.S. § 15A-979(b) (2023). However, to ensure fundamental fairness in the plea negotiation process, this Court ruled in *State v. Reynolds* that the statute did not apply in situations where the State and a defendant had negotiated a plea agreement, holding that a defendant must "give notice of his intention [to appeal the denial of the motion

to suppress] to the prosecutor and the court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute." 298 N.C. 380, 397 (1979). In this case, the State asks us to extend *Reynolds* to apply when a defendant pleads guilty without a plea agreement (sometimes referred to as an "open plea" or "straight plea"). Because open pleas do not necessitate the expansion of *Reynolds* we decline to apply the *Reynolds* rule to open pleas. We hold that when a defendant enters a guilty plea without a plea agreement, the defendant does not waive his or her right of appeal by pleading guilty without prior notice of intent to appeal.

## I. Factual & Procedural Background

Defendant Daniel Raymond Jonas was indicted for possession of a controlled substance after officers located 0.1 grams of methamphetamine in his car during a traffic stop. Mr. Jonas filed a pre-trial motion to suppress, in which he argued that the officer lacked reasonable articulable suspicion for the stop and subsequent search of Mr. Jonas's vehicle. The trial court denied the motion to suppress the evidence.

Subsequently, Mr. Jonas pleaded guilty as charged during a sentencing hearing. Before accepting Mr. Jonas's guilty plea, the trial court asked Mr. Jonas if he had agreed to plead guilty as part of a plea arrangement, and Mr. Jonas confirmed that he had not. The State did not object or correct Mr. Jonas's assertion. Mr. Jonas then pleaded guilty. Mr. Jonas did not give notice of his intent to appeal before the entry of his guilty plea, but minutes after sentencing, at the same hearing, Mr.

Jonas's counsel gave oral notice of appeal on the record. That is, the guilty plea and the notice of appeal occurred on the same day at the same hearing.

The Court of Appeals, in a unanimous decision, held that Mr. Jonas was not required to give notice of intent to appeal the denial of the motion to suppress prior to entering his guilty plea because he did not plead guilty pursuant to a plea agreement. *State v. Jonas*, 280 N.C. App 511, 516 (2021). The Court of Appeals further held that the stop of Mr. Jonas's vehicle was unconstitutional, and that the trial court erred when it denied Mr. Jonas's motion to suppress. *Id.* at 525.

## II.    Analysis

In this appeal, the State argues that a defendant who enters a guilty plea without a plea agreement is still obligated to comply with the rule established in *Reynolds*, in order to retain his or her right to appeal. Such defendant, according to the State, must advise the trial court and the prosecutor of the defendant's intent to appeal the denial of a motion to suppress prior to the entry of his or her plea. Because the principles of fundamental fairness that dictated the outcome in *Reynolds* are not implicated when there is no plea agreement, we hold that defendants who plead guilty without a plea agreement are not obligated to provide notice of intent to appeal the denial of a motion to suppress prior to the entry of a guilty plea.

Broadly speaking, the General Assembly established a statutory right to appeal the denial of a motion to suppress even when a defendant enters a guilty plea. N.C.G.S. § 15A-979(b). This Court in *Reynolds* ruled when the defendant enters a

guilty plea pursuant to a plea agreement they must give notice of intent to appeal before entering the plea. *Reynolds*, 298 N.C. at 397. However, the reasoning that undergirds the *Reynolds* rule is not implicated when the defendant enters a guilty plea without a plea agreement.

Generally, when a defendant enters a "guilty plea, intelligently and voluntarily [and] with the aid of counsel, [the plea] bars the latter assertion of constitutional challenges to the plea negotiation proceeding." *Id.* at 394 (citing *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970)). However, in *McMann*, the Supreme Court identified an exception to this general rule holding that a plea is a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant "*unless the applicable law otherwise provides.*" 397 U.S. at 766 (emphasis added).

Here, similar to the New York statute in *McMann*, the General Assembly has provided the right for a defendant to seek appellate review of "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, *including a judgment entered upon a plea of guilty.*" N.C.G.S. § 15A-979(b) (emphasis added). The General Assembly enacted the statute with the intention of "prevent[ing] a defendant whose only real defense is the motion to suppress from going through a trial simply to preserve his right of appeal." N.C.G.S. § 15A-979, Official Commentary.

-4-

In *Reynolds*, this Court considered whether a defendant should be able to avail himself of the right of appeal under N.C.G.S. § 15A-979(b) after receiving the benefit of a negotiated plea agreement when he did not disclose his intent to appeal during the plea negotiations. 298 N.C. at 397. In the arena of plea bargaining, the Court noted that it was "entirely inappropriate for either side to keep secret any attempt to appeal the conviction." *Id.* The Court held that when a defendant intends to appeal from a suppression order, "he must give notice of his intention to the prosecutor and the court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute." *Id.*

Both parties in *Reynolds* benefited from the negotiated plea. The State made a significant concession in the *Reynolds* plea agreement. The defendant was charged with first-degree murder, first-degree rape, and first-degree burglary. *Id.* at 381. After the court denied the defendant's motion to suppress evidence, the State agreed to a plea arrangement where the defendant pleaded guilty to the lesser charge of second-degree murder, in addition to first-degree rape, and first-degree burglary, and he received two consecutive life sentences. *Id.* at 381-82. Through the bargain, the defendant avoided conviction on more serious charges and the State avoided having to conduct a trial. Only after the court accepted the negotiated plea and several months later imposed the agreed-upon sentence did the defendant give notice of appeal of the denial of his motion to suppress. *Id.* at 388. In holding that the defendant had waived his right to appeal by failing to disclose his intent to appeal,

this Court reasoned that neither "our statute, nor the holding in *Lefkowitz*[1] contemplates a factual pattern such as that disclosed here—one which would cause the State to be trapped into agreeing to a plea bargain in a case as gruesome as this and then have the defendant contest that bargain." *Id.* at 397. The *Reynolds* rule was necessary to advance the interest of fundamental fairness: both parties received a benefit of the bargain and the defendant's nondisclosure of his intent to appeal upended one of the State's benefits—an expectation of finality—after it made a concession on charges. *See id.* at 396–97.

In contrast to *Reynolds*, this case turns on the significance of an open plea—a guilty plea entered without the benefit of an agreement with the State. In North Carolina, there is no system that tracks when charges are resolved through an open plea other than the plea transcript form (which includes a place where it can be designated there was no plea agreement) and the transcript of the plea hearing (including the colloquy). However, North Carolina does track the percentage of charges that are resolved through pleas rather than trials, which was 98% of all felony charges in 2022. N.C. Sent'g & Pol'y Advisory Comm'n, *Structured Sentencing Statistical Report for Felonies and Misdemeanors: Fiscal Year 2022*, at 4 (2023), https://www.nccourts.gov/assets/documents/publications/SPAC-FY-2022-Statistical-

---

[1] In *Lefkowitz v. Newsome*, the United States Supreme Court held, in the context of a federal habeas corpus proceeding, "that when state law permits a defendant to plead guilty without forfeiting his [or her] right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursing those constitutional claims." 420 U.S. 283, 293 (1975).

Report-web-v2.pdf?VersionId=5JR2.GZTlun8tyouDZHNniXDWrmyM._w. The State has not advanced the argument that notwithstanding the plea transcript form and whatever answers a defendant may give in response to a plea colloquy, the State always engages in some form of plea negotiation.

While it appears that this Court has never addressed open pleas, the Court of Appeals has repeatedly acknowledged the existence of open pleas. *See, e.g.*, *State v. Frink*, 158 N.C. App. 581, 588 (2003) ("[A co-conspirator's] guilty plea was an open plea of guilty, and not a plea agreement with the State."); *State v. Ellerbe*, No. COA23-60, slip op. at 2-3 (N.C. Ct. App. Dec. 5, 2023) (unpublished) ("The prosecutor indicated that there was no plea arrangement—this was 'a completely open plea' in which the trial court would determine the sentence."); *State v. Lail*, No. COA19-596, slip op.at 1-2 (N.C. Ct. App. June 2, 2020) (unpublished) (reviewing an *Anders* brief after the defendant entered an open plea); *State v. Nevills*, 158 N.C. App. 733, 736 (2003) (discussing whether it was error for the trial court to refer to an open plea as an agreement). There are some scholarly examinations about the prevalence of open pleas, and at least in some geographic areas, the prevalence may be related to local policies and preferences of prosecutors for reaching plea bargains. *See* Ronald Wright & Marc Miller, *The Screening/Bargaining Tradeoff*, 55 Stan. L. Rev. 29, 74 (2002) (presenting evidence showing the "open plea" rate is much higher in New Orleans than in other jurisdictions because New Orleans has implemented hard screening practices coupled with restrictions on plea bargaining); Russell D. Covey, *Plea*

*Bargaining and Price Theory*, 84 Geo. Wash. L. Rev. 920, 948 (2016) (discussing that even when Alaska temporarily prohibited prosecutors from engaging in plea bargaining, defendants still pled guilty in approximately eighty percent of all criminal cases by entering open pleas). During an oral argument before the Supreme Court of the United States, the Office of the United States Solicitor General estimated that twenty-five percent of pleas in the federal system are "open pleas" that do not involve promises from the government in exchange for the defendant's guilty plea. Oral Argument at 55:02, *Class v. United States*, 583 U.S. 174 (2018) (No. 16-424), https://www.oyez.org/cases/2017/16-424.[2] Thus, it seems uncontested that open pleas are a phenomenon, and now we turn to whether the *Reynolds* rule applies to them.

This Court has not expressly applied the *Reynolds* rule to an open plea; however, *Reynolds* was invoked in *State v. Tew*, 326 N.C. 732 (1990), a case in which it was not clear whether the defendant entered a negotiated or open guilty plea. That case does not answer the question here, to the best we can ascertain. In *Tew*, the defendant was charged with a misdemeanor, driving while impaired, and was found guilty in district court. *Id.* at 734. The defendant appealed to the superior court and after the court denied his motion to suppress, he entered a plea of guilty, specifically reserving his right to appeal the denial of his motion to suppress. *Id.* On appeal, this Court considered whether the defendant had properly preserved the right to appeal.

---

[2] In *Class v. United States,* the United States Supreme Court held that a guilty plea does not waive a defendant's right to challenge the constitutionality of the statute under which he was convicted. 583 U.S. 174, 176 (2018).

*Id.* Citing *Reynolds,* the Court simply said the "defendant did in fact specifically reserve his right to appeal upon entering his plea of guilty." *Id.* at 735. Having so found, the majority in *Tew* focused on the merits of the preserved appeal. *Id.*

Neither the opinion nor the trial court's judgment in *Tew* indicates whether the guilty plea was pursuant to a negotiated plea agreement or an open plea. According to the record in *Tew*, the defendant received the minimum punishment of seven days in custody, but the length of the sentence does not provide any clarity as to whether it followed a plea agreement or an open plea. The Court's analysis of the application of *Reynolds* is short—only one sentence—and does not state that the Court was expanding the scope of the *Reynolds* rule to include open plea agreements. *Id.* at 735. The opinion simply states that the defendant in *Tew* preserved his right to appeal. *Id.* The record in *Tew*, which dates back almost thirty-five years, does not include a plea transcript, and so nothing in the record clarifies whether the State and the defendant entered into a plea agreement. Because the judgment in *Tew* is silent on whether the defendant had a plea agreement and the decision did not explicitly expand the rule established in *Reynolds*, we read *Tew* as simply reciting the current state of the law related to *Reynolds* without expanding its scope.[3]

---

[3] *See Howard v. Boyce*, 254 N.C. 255, 265 (1961) (noting, in reconciliation of arguably conflicting North Carolina Supreme Court precedents, that "decided cases should be examined more from the standpoint of the total factual situations presented than the exact language used. A decision of the Supreme Court must be interpreted within the framework of the facts of that particular case.").

Significantly, in the context of an open plea, the statutory right to appeal cannot operate to undermine the fundamental fairness of a negotiated agreement because there are no concessions or negotiated benefits. In an open plea scenario, both sides are operating without any promise or benefit of a bargain from the other side. From the State's perspective, there are many reasons why the prosecutor may prefer not to engage in plea negotiation, from the time it takes to negotiate to the political ramifications of accepting plea agreements. From the defendant's perspective, a quick guilty plea, freed from the time it may take to negotiate with the prosecutor, may secure the speedier release of a defendant who cannot afford bail and does not face a long sentence. *Structured Sentencing Statistical Report*, at 3, 9, & 13 (highlighting that 60% to 70% of all charged felonies are low-level and eligible for community punishment or an active sentence shorter than the time spent in custody awaiting trial). The reason for the entry of an open plea matters less than the fact that without any negotiation or concessions made by both sides, there can be no trickery or unfair dealing.

We do not worry that the State may be trapped into accepting unfair open pleas because of the safeguards that current plea negotiation procedures already supply. When the State and a defendant enter into a plea agreement, there are statutory requirements to document the agreement. During sentencing, the trial court must ask the prosecutor, defense counsel, and the defendant personally "whether there were any prior plea discussions [and] whether the parties have entered into any

arrangement with respect to [a] plea." N.C.G.S. § 15A-1022(b) (2023). The prosecutor can indicate on the record if there was, in fact, a plea agreement and an expected benefit for the State. Moreover, our statutes and case law provide clear direction that plea agreements are not final until they are approved by the court and finalized in the judgment of the court. *See, e.g., State v. Marlow*, 334 N.C. 273, 281 (1993) (recognizing that the State can rescind a plea agreement prior to approval by the court so long as the defendant did not detrimentally rely upon the agreement); N.C.G.S. § 15A-1023(b) (2023) (stating that a plea agreement containing a sentencing recommendation must have judicial approval before becoming effective). These established requirements for plea agreements and the *Reynolds* rule for plea agreements provide guardrails sufficient to ensure that a defendant cannot trap the State in an unfair agreement while retaining his or her right to appeal.

In this case, Mr. Jonas did not receive any benefit from the State for entering a guilty plea to the charge. Mr. Jonas was charged with possession of 0.1 grams of methamphetamine, a class I felony. At the time of the sentencing hearing, the court asked Mr. Jonas if the plea was subject to any agreement with the State, and Mr. Jonas indicated that it was not. The court then stated, "I understand this is an open plea, meaning it will be up to me what the sentence is." The State entered no objection to the accuracy of that statement. Based upon his prior record level, Mr. Jonas was sentenced to a minimum of six months and a maximum of seventeen months in custody, in the presumptive range for a class I felony. The sentence was

suspended, and Mr. Jonas was placed on thirty months of supervised probation. Before entering his guilty plea, Mr. Jonas served 101 days in custody, and he was given credit for that time served toward his sentence. While the trial court did suspend the sentence, it was not at the recommendation of the State, and by entering an open guilty plea, Mr. Jonas secured his immediate release from incarceration. At the sentencing hearing, the State knew that the trial court had previously denied the motion to suppress—the State emphasized that it was ready to go to trial, that the plea was being entered on the eve of trial, and the State made no objection when the court explained that it was an open plea and sentencing was entirely within the court's discretion. The sentencing hearing began at 2:53 p.m. and concluded at 3:07 p.m. In the course of that fourteen minutes, Mr. Jonas pleaded guilty and verbally noticed his appeal of the denial of his motion to suppress. In short, nothing about the facts of this case suggest that the concerns implicated in *Reynolds* dictate the same outcome here—there were no negotiations, no surprise, and no belabored extensions of the proceedings as in *Reynolds*.

Even beyond the facts of this case, there is no justification to expand the application of Reynolds to abrogate the statute's application to open pleas. The legislature enacted N.C.G.S. § 15A-979 to allow a defendant whose only real defense is a motion to suppress to preserve his right of appeal without compelling the State to go through a trial. N.C.G.S. § 15A-979, Official Commentary. While this Court ruled in *Reynolds* that the statute did not apply to cases where a plea arrangement

had been negotiated, because the principles of fundamental fairness in the justice system required it, we do not treat lightly the impact of expanding the *Reynolds* rule would have here. Criminal defendants are not required by any statute to engage in plea negotiations with the State, and both the State and any defendant remain free to negotiate a plea agreement that would create a final resolution and invoke the *Reynolds* rule. We hold today that when defendants enter a guilty plea without any plea agreement, they do not need to provide notice of intent to appeal before the entry of a guilty plea to retain their statutory right to appeal under N.C.G.S. § 15A-979.

Our holding today does not disturb the rule set forth in *Reynolds* and referenced in *Tew*: when a defendant enters a plea in accordance with a plea agreement and intends to appeal from the denial of a suppression motion pursuant to N.C.G.S. § 15A-979(b), he or she must give notice of his or her intent to appeal before the court accepts the plea or he or she will waive the appeal of right provision of the statute. *See Reynolds*, 298 N.C. at 397.

## III. Conclusion

We hold that a defendant who pleads guilty without a plea agreement is not required to provide notice of intent to appeal prior to entry of the guilty plea to retain his right to appeal both the denial of the suppression motion and the judgment pursuant to N.C.G.S. § 15A-979. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

Chief Justice NEWBY, dissenting.

The sole issue presented in the State's petition for discretionary review is whether a criminal defendant has preserved his statutory right to appeal a denied motion to suppress when he fails to give notice of his intent to appeal before he pleads guilty without a plea agreement. This Court answered this question in the negative in *State v. Tew*, 326 N.C. 732, 392 S.E.2d 603 (1990). Because the majority silently overturns that thirty-four-year-old precedent and disrupts criminal procedure in this State, I respectfully dissent.

Defendant was indicted for Possession of a Schedule II Controlled Substance on 28 June 2019. On 31 October 2019, defendant moved to suppress the evidence, arguing it was seized in violation of his rights under the United States Constitution and the North Carolina Constitution. On 19 November 2019, the trial court denied his motion. The State was fully prepared for trial.

On 3 March 2020, defendant personally pled guilty at a plea hearing, and he did not couch his guilt as an "*Alford* plea" pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970), or as a no-contest plea.[1] When the trial court asked

---

[1] *See generally State v. Taylor*, 374 N.C. 710, 719 n.3, 843 S.E.2d 46, 52 n.3 (2020) ("An *Alford* plea is a type of guilty plea recognized by North Carolina's General Court of Justice in which a criminal defendant accepts that the State has sufficient evidence to convict him, but the defendant does not actually admit his guilt."); *State v. Norman*, 276 N.C. 75, 79, 170 S.E.2d 923, 926 (1969) ("A plea of nolo contendere [(no contest)] is a formal declaration on [the] defendant's part that he will not contend with the State in respect to the charge and is tantamount to a plea of guilty for purposes of the particular criminal action in which it is tendered and accepted.").

defendant if he was in fact guilty, defendant responded, "Yes, sir." The Plea Transcript reflects defendant's acknowledgment of guilt.

When the trial court asked defendant if he was pleading guilty as part of a plea agreement, defendant answered, "No, sir." The trial court responded, "No. There's not [a plea agreement] listed here. I understand this is an open plea . . . ?" Defendant responded, "Yes, sir." The Plea Transcript reflects that defendant pled guilty but that his plea was not part of a plea agreement.

Throughout the plea colloquy, defendant did not give the prosecutor or the trial court notice of his intent to appeal the denied motion to suppress. Accordingly, the Plea Transcript also does not contain a statement reserving defendant's right to appeal the denied motion.

Defendant, defense counsel, the prosecutor, and the trial court signed the Plea Transcript, and the trial court accepted defendant's unilateral guilty plea. The trial court then sentenced defendant to a suspended sentence of six to seventeen months and placed defendant on supervised probation for thirty months. Only thereafter did defendant orally give notice of appeal "with regard to the motion to suppress."

On appeal, the Court of Appeals considered whether this Court's decision in *State v. Reynolds* required defendant to give notice of his intent to appeal before unilaterally pleading guilty without a plea agreement. *State v. Jonas*, 280 N.C. App. 511, 515–16, 867 S.E.2d 563, 566 (2021). *See generally State v. Reynolds*, 298 N.C. 380, 397, 259 S.E.2d 843, 853 (1979) ("[W]hen a defendant intends to appeal from a

suppression motion denial pursuant to [N.C.]G.S. [§] 15A-979(b), he must give notice of his intention to the prosecutor and the court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute."), *cert. denied*, 446 U.S. 941, 100 S. Ct. 2164 (1980). The Court of Appeals distinguished *Reynolds* because that case involved a negotiated plea, whereas defendant in the present case entered a unilateral plea without a plea agreement. *Jonas*, 280 N.C. App. at 516, 867 S.E.2d at 567. Accordingly, the Court of Appeals held that defendant was not required to give notice of his intent to appeal the denied suppression motion. *Id.* The court reasoned that because defendant did not negotiate his plea, the State was "not 'trapped into agreeing to a plea bargain' only to later 'have[ ] [d]efendant contest that bargain.' " *Id.* (first alteration in original) (quoting *Reynolds*, 298 N.C. at 397, 259 S.E.2d at 853). The Court of Appeals therefore concluded it had appellate jurisdiction. *Id.* at 517, 867 S.E.2d at 567. On the merits, the Court of Appeals reversed the trial court's suppression order and remanded the case. *Id.* at 525, 867 S.E.2d at 571.

The State sought discretionary review only as to whether defendant was required to provide notice of his intent to appeal. This Court allowed the State's petition on 17 August 2022.

This Court must decide whether defendant preserved his statutory right of appeal when he did not give notice of his intent to appeal a denied motion to suppress before he unilaterally pled guilty. This is a question of law. Questions of law are reviewed de novo. *State v. Khan*, 366 N.C. 448, 453, 738 S.E.2d 167, 171 (2013).

A defendant does not have a constitutional right to appeal a criminal conviction. *State v. Berryman*, 360 N.C. 209, 212–14, 624 S.E.2d 350, 353–54 (2006). Rather, a "criminal defendant's right to appeal a conviction is provided entirely by statute." *Id.* at 214, 624 S.E.2d at 354. The General Statutes provide a broad right of appeal to defendants who enter pleas of not guilty and are subsequently convicted. N.C.G.S. § 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

The General Statutes are not so generous, however, towards defendants who plead guilty or no contest. Indeed, a defendant who enters a plea of guilty or no contest "is not entitled to appellate review [of his conviction] as a matter of right" except in a few statutorily prescribed circumstances. *Id.* § 15A-1444(e).

Relevant here, subsection 15A-979(b) provides that "[a]n order finally denying a motion to suppress evidence *may be* reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." *Id.* § 15A-979(b) (emphasis added). Accordingly, "[although] generally a defendant who pleads guilty to criminal charges may not appeal from the resulting conviction, a trial court's order denying a motion to suppress evidence may be reviewed upon an appeal from a guilty plea." *State v. Robinson*, 383 N.C. 512, 518 n.1, 881 S.E.2d 260, 264 n.1 (2022) (citations omitted) (first citing N.C.G.S. § 15A-1444(a1) (2021); and then citing *id.* § 15A-979(b)).

As a matter of issue preservation, however, this Court requires a defendant to be forthright with both the trial court and the prosecutor if he wishes to pursue an appeal under subsection 15A-979(b). *Reynolds*, 298 N.C. at 397, 259 S.E.2d at 853; *Tew*, 326 N.C. at 735, 392 S.E.2d at 605; *cf.* N.C. R. App. P. 10(a) (requiring parties to raise issues at the trial court, thereby inhibiting their ability to conceal issues until appeal). *See generally* N.C. Const. art. IV, § 13, cl. 2 ("The Supreme Court shall have exclusive authority to make rules of procedure and practice for the Appellate Division."). Gamesmanship with criminal justice is not tolerated, and a defendant must disclose his intent to appeal a denied motion to suppress before plea negotiations are finalized or terminated and the plea is accepted. *See Reynolds*, 298 N.C. at 397, 259 S.E.2d at 853; *see also Tew*, 326 N.C. at 735, 392 S.E.2d at 605. If the defendant does not, he has failed to preserve his right to appeal, and the appellate courts may not hear his appeal.

This fundamentally fair rule originated in this Court's opinion in *State v. Reynolds*. There, the defendant negotiated plea agreements with the State after the trial court denied his motion to suppress evidence. 298 N.C. at 388, 259 S.E.2d at 848. The defendant then appealed the denied suppression motion "[i]mmediately after the sentence was imposed." *Id.* The trial court, however, determined that the defendant had waived his right to appeal because he did not disclose his intention to appeal before entry of the pleas. *Id.* at 389, 259 S.E.2d at 848. This Court agreed with the trial court. *See id.* at 394–97, 259 S.E.2d at 852–53. We held that to preserve

subsection 15A-979(b)'s statutory right to appeal, a defendant must give notice of his intent to appeal the denial of a motion to suppress to the prosecutor and the trial court "before plea negotiations are finalized." *Id.* at 397, 259 S.E.2d at 853. We reasoned that notice of intent to appeal a denied suppression motion prior to pleading guilty is necessary because "the State acquires a legitimate expectation of finality" when a "defendant chooses to bypass the orderly procedure for litigating" a criminal case. *Id.* (quoting *Lefkowitz v. Newsome*, 420 U.S. 283, 289, 95 S. Ct. 886, 889 (1975)); *see also id.* ("The plea bargaining table does not encircle a high stakes poker game. It is the nearest thing to arm's length bargaining the criminal justice system confronts. As such, it is entirely inappropriate for either side to keep secret any attempt to appeal the conviction."). Ultimately, *Reynolds* turned on fairness to the State—and, inherently, the victims it represents.

Eleven years later, this Court decided *Tew* and extended *Reynolds*'s holding to cases in which the defendant does not plead guilty in exchange for promises from the State. In *Tew* the defendant moved to suppress evidence discovered during his arrest. 326 N.C. at 734, 392 S.E.2d at 604. The trial court denied the defendant's motion to suppress. *Id.* The defendant then immediately pled guilty while "specifically reserving his right to appeal the denial of his motion to suppress." *Id.* Even though it

did not appear that the defendant entered his plea pursuant to a plea agreement,[2]

this Court still applied the notice requirement from *Reynolds*. *Id.* We stated, in full,

> This Court has held that when a defendant intends to appeal from the denial of a suppression motion pursuant to [subsection § 15A-979(b)], he must give notice of his intention to the prosecutor and to the court before plea negotiations are finalized; otherwise, he will waive the appeal of right provisions of the statute. *State v. Reynolds*, 298 N.C. 380, 259 S.E.2d 843 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 795 (1980). In the case *sub judice*, defendant did in fact specifically reserve his right to appeal upon entering his plea of guilty. *Consequently, the path has been paved for us now to address the substantive issue presented.*

*Id.* at 735, 392 S.E.2d at 605 (emphasis added). This Court then addressed the merits

of the defendant's appeal. *Tew* therefore extended the *Reynolds* rule to situations in

which defendants unilaterally plead guilty without plea agreements.

According to these long-standing precedents, a defendant must give notice to

the trial court and the prosecutor of his intent to appeal the denial of a motion to

suppress before the trial court accepts the guilty plea—regardless of whether the plea

is pursuant to a plea agreement. As this Court recently summarized,

> a defendant who wishes to maintain a right to appeal from the denial of a motion to suppress despite pleading guilty after the denial of the motion must either include in the plea transcript a statement reserving the right to appeal the motion to suppress or orally advise the trial court and the prosecutor before the conclusion of plea negotiations that the defendant intends to appeal the denial of the

---

[2] The majority acknowledges that the record in *Tew* is bereft of *any* evidence suggesting that the defendant's plea was pursuant to a plea agreement.

motion to suppress.

*Robinson*, 383 N.C. at 518 n.1, 881 S.E.2d at 264 n.1.

Here defendant gave neither the trial court nor the prosecutor notice that he intended to appeal the denied suppression motion prior to the trial court's acceptance of his guilty plea. Indeed, defendant did not even mention the prospect of appealing the denied suppression motion until after the trial court conducted the plea colloquy, accepted his plea, and pronounced a sentence. Therefore, defendant failed to abide by the rule set forth in *Reynolds* and *Tew*. Accordingly, he did not preserve his statutory right to appeal.

The majority, however, holds that criminal defendants need not give notice of their intent to appeal a denied motion to suppress to the prosecutor or the trial court before unilaterally pleading guilty. By so holding, the majority dismisses *Tew* as irrelevant because the Court did not expressly state that *Reynolds* applies to unnegotiated, unilateral plea deals. This conclusion is wrong because it ignores the fact that *Tew* plainly applied the *Reynolds* rule in a situation in which the defendant did not plead pursuant to a plea agreement. If the Court in *Tew* had not intended to extend *Reynolds* to situations in which a defendant unilaterally pleads guilty without a plea agreement, we would have simply addressed the defendant's appeal without first considering if he satisfied the rule in *Reynolds*. Indeed, we would not have said the "path has been paved" to consider defendant's appeal unless a path needed paving. *Tew*, 326 N.C. at 735, 392 S.E.2d at 605. This Court therefore recognized a

consequential relationship between the defendant's actions at the trial court and this Court's willingness to consider his appeal. *See id.* ("*Consequently*, the path has been paved for us now to address the substantive issue presented." (emphasis added)).

*Tew*'s extension of *Reynolds*'s holding makes sense. As this Court has held, "there is no absolute right to have a guilty plea accepted." *State v. Collins*, 300 N.C. 142, 148, 265 S.E.2d 172, 176 (1980). Accordingly, in virtually all criminal cases, the defendant and the prosecutor are in an ongoing dialogue—that is, negotiations— about potential plea agreements. These discussions often continue right up until the very moment a plea is entered. And even assuming those talks do not culminate in a plea agreement and the defendant instead pleads in an open plea, the prosecutor is under no obligation to assent to that plea. Rather, a prosecutor may reject the defendant's unilateral plea. Therefore, *any* time a plea is entered and a prosecutor signs a plea transcript, the concerns espoused in *Reynolds* are implicated. A defendant should not be able to take the State by surprise and subsequently renege on his guilty plea if he did not give fair notice of his intent to appeal a denied motion to suppress.

The majority's attempt to distinguish between negotiated pleas and open pleas also falls flat. The majority artificially reduces *Reynolds*'s justifications and oversimplifies the downstream effects of an open plea. Undeniably, there is no risk of the State being duped or "trapped" in a bad bargain when the defendant does not plead pursuant to a plea agreement. *Reynolds*, 298 N.C. at 397, 259 S.E.2d at 853.

That, however, was not *Reynolds*'s sole concern. Rather, this Court also highlighted that when a defendant chooses to plead guilty and "bypass the orderly procedure" of the trial, "the State acquires *a legitimate expectation of finality* in the conviction thereby obtained." *Id.* (emphasis added) (quoting *Lefkowitz*, 420 U.S. at 289, 95 S. Ct. at 889). This expectation of finality does not disappear simply because the State did not negotiate the ultimate plea with the defendant.

Indeed, in many cases guilty pleas are entered on the verge of trial—after weeks or months of trial preparation. And as this case well illustrates, a case can take several years to wind its way through the appellate courts. During that time, many factors can undermine the State's readiness for trial—witnesses' memories may fade; witnesses may die or become unavailable; evidence may be accidentally lost or destroyed; the prosecutor's office may experience drastic turnover; et cetera. These concerns are present in all pleas, whether entered under an plea agreement or not. Accordingly, any time a defendant pleads guilty without giving notice of his intent to appeal a denied motion to suppress, the State rightfully obtains a legitimate expectation that the guilty plea is the end of that case.

And in many cases, guilty pleas also affect another person: the victim. If a defendant admits his guilt without sharing his intent to appeal the conviction, the victim and the victim's family and friends are left to believe that the case is over. If the defendant is then able to appeal the conviction despite giving no indication of his plan to do so, the victim and the victim's family and friends are robbed of their sense

of closure. The lack of finality for victims and their family and friends is especially troubling in cases in which the defendant admits his guilt.

For all these reasons, I would reaffirm *Tew*'s holding and reiterate this Court's bright-line rule: for *all* pleas, in order to preserve his statutory right to appeal, a criminal defendant must give notice of his intent to appeal a denied motion to suppress to the prosecutor and the trial court before he pleads guilty.[3] That requirement was not met here. Accordingly, I would reverse the decision of the Court of Appeals. Because the majority unjustifiably departs from our long-standing precedent and thereby alters criminal procedure in this State, I respectfully dissent.

Justice BERGER joins in this dissenting opinion.

---

[3] Rather than overturning *Tew*, any error at the trial court would best be addressed via an ineffective assistance of counsel claim. *See generally State v. Thompson*, 359 N.C. 77, 115, 604 S.E.2d 850, 876 (2004) ("[To prevail on an ineffective assistance of counsel claim,] [a] defendant must first show that his defense counsel's performance was deficient and, second, that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that 'counsel's representation "fell below an objective standard of reasonableness." ' Generally, 'to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (citations omitted) (first citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), and then quoting *Wiggins v. Smith*, 539 U.S. 510, 521, 534, 123 S. Ct. 2527, 2535, 2542 (2003))).